IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JOHANN SMITH,<br><br>             Plaintiff,<br><br>     v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>             Defendant. | Civil No. 19-10319 (RMB/AMD)<br><br>**OPINION** |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court on the Motion to Dismiss brought by Defendant State Farm Fire and Casualty Company. [Docket No. 37.] For the reasons expressed below, the Court will grant Defendant's Motion, in part, and deny it, in part.

I.   **BACKGROUND**

Plaintiff Johann Smith owns a property at 704 Society Hill Boulevard, Cherry Hill, New Jersey 08004 (the "Property"), which she insured through Defendant with Homeowners Policy number 30-B2-8645-2 (the "Policy"). The Policy provides, in relevant part:

**SECTION I — LOSSES INSURED**

**COVERAGE A — BUILDING PROPERTY AND COVERAGE D — LOSS ASSESSMENT**

[Defendant] will pay for accidental direct physical loss to the property described in Coverage A and Coverage D, unless the loss is excluded or limited in **SECTION I — LOSSES NOT INSURED** or otherwise excluded

or limited in this policy. However, loss does not include and [Defendant] will not pay for, any *diminution in value*.

**COVERAGE B — PERSONAL PROPERTY**

[Defendant] will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I — LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and [Defendant] will not pay for, any *diminution in value*.

\*   \*   \*

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    \*   \*   \*

    c.   that occurs or develops over a period of time and is caused by or resulting from:

         (1)   condensation or the presence of humidity, moisture, or vapor; or

         (2)   seepage or leakage of water, steam, or sewage that is:

               (a)   continuous;
               (b)   repeating;
               (c)   gradual;
               (d)   intermittent;
               (e)   slow; or
               (f)   trickling.

    \*   \*   \*

**SECTION I — LOSSES NOT INSURED**

2

1.    [Defendant] will not pay for any loss to the property described in Coverage A and Coverage D that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these:

*   *   *

f.    seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

(1)  and is:

(a)  continuous;
(b)  repeating;
(c)  gradual;
(d)  intermittent;
(e)  slow; or
(f)  trickling; and

(2)  from a:

*   *   *

(c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*   *   *

g.    wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h.    corrosion, electrolysis, or rust;

i.    wet or dry rot.

[Docket No. 31, Exhibit A, at 12-15.]

3

Plaintiff alleges that on or around October 20, 2018, at which time the Policy was in effect, she "suffered a water loss that originated below her kitchen sink which caused damage to her cabinets, floor and basement." [Docket No. 31, ¶ 61.] She alleges that prior to that date, there had been no signs of any leaking water or water damage near her kitchen sink. She does admit, however, that she replaced her garbage disposal, which was rusted at the bottom. Plaintiff contends in her Complaint that "[t]he leak . . . was the result of the rusted garbage disposal [and] occurred over a reasonable amount of time" of "less than 14 days." [Id. ¶ 66.]

Plaintiff alleges that she promptly notified Defendant of the issue and that on October 24, 2018, Defendant inspected the property. The inspector, Michael Kulinski, "was able to see that the base of [Plaintiff's] kitchen cabinet beneath [her] sink was rotted and deteriorated." [Docket No. 31, Exhibit C, at 1.] He was also aware that she had replaced the old garbage disposal, which all agree is not covered by the Policy. [Id.] Finally, he "inspected the damage in the basement and noticed rot and deterioration to the sub-floor below where the kitchen sink is located." [Id.] He inspected "a few items of [Plaintiff's] personal property that were covered in rust from the leak." [Id.] Finally, he concluded that "[t]he damage to [Plaintiff's] kitchen cabinet, tile floor and contents are [sic] the result of

4

a continuous leak from your plumbing system." [Id.] Because the Policy "does not cover damage which is the result of a continuous leak," Kulinski notified Plaintiff that Defendant would be "unable to extend coverage for [her] loss." [Id.] He also noted that the "garbage disposal unit failed due to wear and tear which is also not covered under" the Policy. [Id.]

As a result of Defendant's denial of coverage, Plaintiff filed this lawsuit on March 14, 2019, in the Superior Court of New Jersey, Law Division, Camden County. [Docket No. 1, ¶ 1.] Defendant removed the case to this Court on April 18, 2019. [Docket No. 1.] Defendant filed a Motion to Dismiss on May 10, 2019, [Docket No. 11], but on May 20, 2019, Plaintiff filed her First Amended Complaint, [Docket No. 12], prompting Defendant to withdraw its initial Motion to Dismiss, [Docket No. 13].

Defendant then filed a Motion to Dismiss the First Amended Complaint on June 21, 2019. [Docket No. 16.] Plaintiff responded by filing a Motion to Amend/Correct on July 17, 2019. [Docket No. 20.] On August 13, 2019, the case was reassigned to the undersigned, who administratively terminated the Motion to Dismiss the First Amended Complaint and the Motion to Amend/Correct on August 23, 2019. [Docket No. 25.] The Court then held a telephone conference with the parties on October 25, 2019, [Docket No. 30], after which Plaintiff filed the operative

Third Amended Complaint ("TAC") on November 12, 2019, [Docket No. 31].

The TAC alleges five counts, each of which is alleged both on behalf of Plaintiff individually and on behalf of the putative class. Count I alleges breach of contract by Defendant. [Id. ¶¶ 73-82, 138-147.] Count II alleges bad faith by Defendant. [Id. ¶¶ 83-88, 148-153.] Count III alleges that Defendant violated the Consumer Fraud Act, N.J. STAT. ANN. § 56:8-2. [Id. ¶¶ 89-104, 154-169.] Count IV alleges that the terms of the Policy are unconscionable. [Id. ¶¶ 105-12, 170-74.] Finally, Count V alleges that Defendant violated the Unfair Claims Settlement Practices Act, N.J. ADMIN. CODE § 11:2-17. [Id. ¶¶ 113-23, 175-85.]

On November 26, 2019, Defendant filed a pre-motion letter, pursuant to this Court's individual preferences and rules, requesting a conference prior to filing its Motion to Dismiss the Third Amended Complaint. [Docket No. 32.] Plaintiff eventually responded to that letter, [Docket No 34], and on February 19, 2020, the Court instructed Defendant to file its Motion, noting specifically that Defendant must "address in its motion to dismiss why the present arguments should be addressed by a motion to dismiss, and why they should not be addressed instead at the summary judgment stage." [Docket No. 36.]

6

Defendant filed the pending Motion to Dismiss on March 11, 2020. [Docket No. 37.] Plaintiff responded on April 6, 2020. [Docket No. 40.] Defendant filed its reply on May 28, 2020. [Docket No. 44.]

## II.   JURISDICTION

The Court exercises subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332. Plaintiff is a citizen of New Jersey; Defendant is an Illinois corporation with its principal place of business in Illinois. [Docket No. 1, ¶¶ 14-15.] Plaintiff alleges a class of "well over ten thousand (10,000) people." [Id. ¶ 17 (quoting Complaint).] The parties agree that the amount in controversy exceeds $5,000,000. [See id. ¶¶ 18-25.] Therefore, all of CAFA's jurisdictional requirements are met. See 28 U.S.C. § 1332.

## III. ANALYSIS

### A.   Standard for Motion to Dismiss

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt

v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**B.   Defendant's Motion to Dismiss**

Defendant now argues that each of the Counts in Plaintiff's TAC should be dismissed. [Docket No. 37-1.] First, Defendant argues that Plaintiff's breach of contract claim (Count I) should be dismissed because (1) the Policy is not ambiguous and (2) Plaintiff has failed to plead facts sufficient to show that Defendant improperly denied her claim. [See id. at 7-16.]

Second, Defendant argues that Plaintiff's bad faith claim (Count II) should be dismissed because "the TAC fails to state a claim for bad faith." [Id. at 16-18.] Third, Defendant argues that Plaintiff's Consumer Fraud Act ("CFA") claim (Count III) should be dismissed because (1) the CFA does not apply to the denial of insurance claims and (2) even if it did, Plaintiff has failed to plead facts sufficient to sustain a CFA claim. [Id. at 18-21.] Fourth, Defendant argues that Plaintiff's unconscionability claim (Count IV) should be dismissed because she "fails to state a claim of 'unconscionability.'" Id. at 21-23.] Finally, Defendant argues that the class claims should be dismissed either because "the TAC fails to state any claim on which relief can be granted and should accordingly be dismissed in its entirety" or, in the event that some of the claims survive this Motion to Dismiss, they instead fail to satisfy Rule 23's commonality and superiority requirements. [Id. at 23-30.]

Defendant's Motion can be divided into three main arguments. First, it argues that the Policy is not ambiguous. Second, it argues that Plaintiff fails to allege sufficient facts for any of her individual claims to survive the Motion to Dismiss. Third, it argues that the Court should strike or

dismiss the class claims. The Court will address each of these arguments in turn.[1]

### 1.   Ambiguity

The principal issue raised by the parties is whether certain terms of the Policy are ambiguous. Specifically, Plaintiff argues that the Policy's exclusion from coverage of damages caused by "seepage or leakage of water . . . that occurs or develops over a period of time; and is: continuous; repeating; gradual; intermittent; slow; or trickling" is ambiguous. [See Docket No. 40, at 9-25.] Defendant argues that the language is unambiguous. [See Docket No. 37-1, at 7-15.]

As Plaintiff explains in her brief, an "all-risk" policy, like the one at issue in this case, covers "all losses of a fortuitous nature, . . . unless the policy contains a specific provision expressly excluding [a] loss from coverage." Ariston Airline & Catering Supply Co. v. Forbes, 511 A.2d 1278, 1282 (N.J. Super. Ct. Law Div. 1986) (quoting Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164, 191 (D. Conn. 1984)). Once a plaintiff shows direct and fortuitous

---

[1] Count V of the TAC alleges that Defendant violated the New Jersey Unfair Claims Settlement Practices Act ("UCSPA"). However, Plaintiff conceded in her response to Defendant's pre-motion letter that "there is no individual claim of action relating to the UCSPA." [Docket No. 35, at 3.] Therefore, this Court will dismiss that claim as brought by Plaintiff on her own behalf.

damage to the property, the defendant then has the burden "to establish its affirmative defense by proving that the loss fell within [a] specific policy exception." Morie v. N.J. Mfrs. Indem. Ins. Co., 137 A.2d 41, 44 (N.J. Super. Ct. App. Div. 1957).

In this case, there is no dispute that the loss at issue would be covered by the Policy if it were not specifically excluded from the Policy. Therefore, a core issue here is whether the Policy's relevant exclusionary language applies to the loss suffered by Plaintiff. If it does, then Defendant is within its rights to deny Plaintiff's claim; if it does not, then Defendant is obligated to cover Plaintiff's claim.

Plaintiff argues that the exclusionary language in question is not valid — and therefore that her claim must be covered — because it is ambiguous. Plaintiff's argument depends on a finding that the language of the Policy is ambiguous, as explained below.

In New Jersey, "the words of an insurance policy should be given their plain meaning." Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 843 A.2d 1094, 1103 (N.J. 2004). An exclusionary clause, which is to be "narrowly construed," is presumptively valid and enforceable only if it is "specific, plain, clear, prominent, and not contrary to public policy." Princeton Ins. Co. v. Chunmuang, 698 A.2d 9, 17 (N.J. 1997) (quoting Doto v.

Russo, 653 A.2d 1371, 1378 (N.J. 1995)); see also Pan Am. World
Air, Inc. v. Aetna Cas. & Surety Co., 505 F.2d 989, 1003-04 (2d
Cir. 1974) ("The experienced all risk insurers should have
expected the exclusions drafted by them to be construed narrowly
against them and should have calculated their premiums
accordingly.").

If a term is "ambiguous," then the Court will "construe
[it] against the insurer and in favor of the insured to give
effect to the insured's reasonable expectations." Passaic Valley
Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 21 A.3d
1151, 1158 (N.J. 2011). A term is ambiguous if it "is subject to
more than one reasonable interpretation." Templo Fuente de Vida
Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 129 A.3d 1069,
1075 (N.J. 2016). "Only where there is a genuine ambiguity, that
is, 'where the phrasing of the policy is so confusing that the
average policyholder cannot make out the boundaries of the
coverage,' should the reviewing court read the policy in favor
of the insured." Id. (internal quotations omitted) (quoting
Progressive Cas. Ins. Co. v. Hurley, 765 A.2d 195, 202 (N.J.
2001)). The question of whether an insurance policy's terms are
ambiguous is one of law for the court to decide. Newport Assocs.
Dev. Co. v. Traverlers Indem. Co. of Ill., 162 F.3d 789, 792 (3d
Cir. 1998).

Based on the above, Plaintiff argues that the Policy exclusion for losses caused by "seepage or leakage of water . . . that occurs or develops over a period of time; and is: continuous; repeating; gradual; intermittent; slow; or trickling" is ambiguous and should therefore be read in favor of permitting her claim. She points to several factors in making this argument. First she argues that the relevant portions of the Policy, when "read in their totality and given their plain meaning, . . . are ambiguous and confusing." [Docket No. 40, at 14.] This, she contends, is because "it appears that water damage will be covered under some circumstances" given the general language of the Policy, only for the exclusionary language to exclude from coverage losses "directly or immediately caused by" a series of "perils . . . , regardless of whether the loss occurs abruptly or gradually." [Id. (quoting the Policy). "The term 'abrupt,'" Plaintiff argues, "contradicts all the terms used to describe a continuous, slow-moving leakage or seepage. Continuous, repeating, gradual and intermittent leakage" — all of which are not covered under the relevant exclusionary clause — "cannot also be abrupt." [Id.]

Plaintiff argues that this language, in concert with the undisputed plain meaning of "a period of time," renders "accidental damage caused by water leakage [to be] covered unless such damage is caused by an abrupt or gradual water

leakage or seepage which occurs over a period of time." [Id. at 15.] "Every water leak that has ever happened in the history of mankind," she continues, "has been abrupt or gradual and has occurred over a period of time." [Id.] "If the Policy does not cover damage caused by abrupt leaks that occur over a period of time, or gradual leaks that occur over a period of time, what coverage is Plaintiff and every other Defendant insured receiving in exchange for their premium payments?" [Id.] In other words, Plaintiff argues that the Policy "excludes every conceivable water leak." [Id. at 16.]

The Court disagrees with Plaintiff's interpretation. Only a deliberately tortured reading of the Policy leads to the conclusion that the Policy excludes all water leaks. In fact, Plaintiff's interpretation of the Policy is the one that most directly contradicts its plain language, given that the Policy explicitly provides coverage for certain types of leaks. The purpose of the Policy is obvious: some leaks are covered, and others are not.

Plaintiff's tiff with the Policy language is that it does not perfectly define the precise scenarios in which coverage will be denied and in which coverage will be provided. And of course that is true: words like "continuous," "repeating," "gradual," "intermittent," "slow," and "trickling" are subjective to some extent, as many words are. But such inherent

15

imprecision is a far cry from "a genuine ambiguity" of "phrasing . . . so confusing that the average policyholder cannot make out the boundaries of the coverage." <u>Templo Fuente de Vida</u>, 129 A.3d at 1075 (internal quotations omitted) (quoting <u>Hurley</u>, 765 A.2d at 202). Therefore, the Policy language at issue here is not legally ambiguous.

This Court is not alone in making such finding. For instance, in <u>Brodzinski v. State Farm Fire & Casualty Co.</u>, the plaintiff argued that a policy that excluded from coverage "continuous or repeated seepage or leakage" that "occurs over a period of time" was ambiguous. Civil Action No. 16-6125, 2017 WL 3675399, at *4 (E.D. Pa. Aug. 25, 2017). In that case, the Court held:

> When reading "period of time" in the context of the entire exclusion — particularly the language "continuous or repeated seepage or leakage" — it is apparent that the Policy does not provide coverage for damage that occurs due to events that are continuous or repeated. In contrast, the Policy would provide coverage for damage that is caused by single, isolated events that do not occur over a period of time.

<u>Id.</u> at *5. The phrase, therefore, was not ambiguous.

Here, Plaintiff argues that <u>Brodzinski</u> was "poorly reasoned" because,

> by definition, a 'continuous' event is a single event because it is uninterrupted. However, according to the <u>Brodzinski</u> Court, coverage for a loss is only provided if a single (or continuous) event <u>does not occur over a period of time</u>. This is impossible, as every event,

16

> whether it is single, isolated, continuous or
> repeated, occurs over some period of time.

[Docket No. 40, at 17 (alterations omitted) (emphasis in original).] Once again, though, Plaintiff's hyper-literal, impractical reading of the language obscures the reasonable meaning of the terms in question. While Brodzinski is not binding on this Court, the reasoning in that case was sound. This Court, following similar reasoning, comes to the same conclusion. See also Fifth v. State Farm Ins. Co., No. 11-7440, 2014 WL 1253542, at *5 (D.N.J. Mar. 25, 2014) (holding similar language to be unambiguous in the context of that case).[2]

### 2.   Insufficient facts

Next, Defendant argues that Plaintiff has failed to state sufficient facts to survive a motion to dismiss on any of her four claims — breach of contract, bad faith, consumer fraud, and unconscionability. The Court will address each in turn.

### a.   Breach of contract

In New Jersey, a breach of contract claim requires a showing that (1) a valid contract exists, (2) the defendant

---

[2] Plaintiff also argues that testimony from Ed Toussant, a Defendant employee, that "[a] month, a week, a year, an hour" are all "periods of time" demonstrates the ambiguity of the phrase. The Court is not convinced by that argument, either. As noted above, the hyper-literal reading of the phrase that Plaintiff seeks to impose is not reasonable under the fuller context of the Policy. The testimony from Toussant does not change the analysis.

failed to perform its obligations under the contract, and (3) "a causal relationship between the breach and the plaintiff's alleged damages." DeGennaro v. Am. Bankers Ins. Co. of Fla., 737 F. App'x 631, 638 (3d Cir. 2018). Only the second element is really in dispute here: it is undisputed that a valid contract exists and, if the second element is proven, then it would follow that Plaintiff's alleged damages (i.e., not being reimbursed for her losses by Defendant) would also be satisfied. Therefore, the core issue of this claim is whether Plaintiff alleged sufficient facts to prove that Defendant failed to perform its obligations under the contract.

Although Plaintiff's TAC does include many conclusory statements that the Court will not consider in this determination, she nevertheless alleges sufficient facts to survive the motion to dismiss standard on this claim. Taking all of her allegations as true and viewing them in the light most favorable to her, see Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005), Plaintiff has satisfactorily pled that she was entitled to coverage under the Policy and Defendant failed to provide said coverage. Namely, she contends that the leak occurred for fewer than fourteen days and that the first time there were any signs of leaks or water damage was on the very day that she notified Defendant of the loss. [See Docket No. 31, ¶¶ 60-67.] This is sufficient to survive the Motion to Dismiss.

Therefore, Defendant's Motion will be denied with respect to the breach of contract claim.

### b.   Bad faith

A claim for bad faith on a first-party insurance claim in New Jersey requires that the plaintiff show that the insurer (1) had no "reasonable basis for denying benefits of the policy and . . . [had] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Pickett v. Lloyd's, 621 A.2d 445, 453 (N.J. 1993) (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)). "Under this 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." Id. at 454. "In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith." Ketzner v. John Hancock Mut. Life Ins. Co., 118 F. App'x 594, 599 (3d Cir. 2004). Therefore, even at the motion to dismiss stage, the existence of genuine issues of material fact will require the dismissal of a bad faith claim. See Fuscellaro v. Combined Ins. Grp., Ltd., Civil Action No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 19, 2011); see also Pickett, 621 A.2d at 454; Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 400-01 (D.N.J. 2000); Polizzi

<u>Meats v. Aetna Life & Cas. Co.</u>, 931 F. Supp. 328, 335 (D.N.J. 1996).

In this case, a genuine issue of material fact exists as to whether Plaintiff's losses were covered under the policy. Here, Plaintiff goes a step further than admitting to a genuine issue of material fact; she in fact concedes certain facts that, if true, would provide at the very least a "fairly debatable" and "reasonable basis" for Defendant's denial of coverage. [Docket No. 40, at 12.] Specifically, the rusting of the garbage disposal, the "rot and deterioration to the sub-floor below where the kitchen is located," and Plaintiff's personal property that was "covered in rust" from the garbage disposal — all of which are admitted to in the TAC or are alluded to in Defendant's Denial Letter — provide a "fairly debatable" and "reasonable basis" for Defendant's denial of coverage. Defendant relied on those facts, which Plaintiff does not contest, in denying Plaintiff's claim. Even if she did contest those facts, it would amount to a genuine issue of material fact. Therefore, the Court finds that Plaintiff has not met the relatively high pleading standard for a bad faith claim, as articulated by the New Jersey Supreme Court. The Court will grant Defendant's Motion to Dismiss with respect to Count II.

c.   **Consumer Fraud Act**

A New Jersey Consumer Fraud Act claim requires that the plaintiff allege that (1) "the defendant engaged an unlawful practice" (2) "that caused" (3) "an ascertainable loss to the plaintiff." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007). Here, the parties dispute whether the CFA applies to disputes about the denial of insurance benefits coverage. Plaintiff attempts to avoid this issue by arguing that her claim "is not based upon the denial of insurance benefits," but rather "upon the sale of the insurance policy as well as the subsequent performance where Defendant has elected not to fulfill its obligations under the insurance policy." [Docket No. 40, at 28.]

Plaintiff borrows this language from a 2007 Third Circuit case that held that "[t]he CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)." Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 266 (3d Cir. 2007). However, Weiss dealt with "the allegedly fraudulent practice of discontinuing previously authorized benefit payments," as opposed to a case in which the plaintiff filed an insurance claim" and "was denied . . . benefits." See Alpizar-Fallas v. Favero, 908 F.3d 910, 916-17 (3d Cir. 2018). Moreover, as Defendant points out in its reply brief, "several courts in this district and the intermediate

21

appellate court in New Jersey have definitively held that the CFA is inapplicable to claims for denial of benefits" since _Weiss_. [Docket No. 44, at 8.] _See_, _e.g._, _Granelli v. Chicago Title Ins. Co._, 569 F. App'x 125, 133 (3d Cir. 2014) ("New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act.") (quoting _Van Holt v. Liberty Mut. Fire Ins. Co._, 163 F.3d 161, 168 (3d Cir. 1998)).

There is an important distinction, then, between claims that allege fraudulent performance by the insurer, which the CFA covers, and those that allege a refusal to pay benefits, which the CFA does not cover. One example of "allegations of fraud in connection with the subsequent performance of a consumer contract" that survived a motion for summary judgment is when a claims adjuster falsely represented that a claimant had to sign a document to facilitate her claim being approved, when in fact the document was a broad waiver of any and all claims. _Alpizar-Fallas_, 908 F.3d at 918. Another example involved an insured being approved for payouts after suffering a heart attack only for the benefits to be discontinued — not due to any legitimate reason, but rather due to "an illegal policy and scheme" of the insurance company "to reduce expensive payouts" — several months later. _Weiss_, 482 F.3d at 256, 266.

Conversely, the CFA "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." Myska v. N.J. Mfrs. Ins. Co., 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015). One example of this comes from Myska, in which "the defendant insurance company had denied the plaintiffs' claims for payment for diminution of value of their cars after they had been damaged in accidents." Alpizar-Fallas, 908 F.3d at 917. In Myska, "the essence of plaintiffs' causes of action involve[d] whether they filed and supported a claim for a specified amount of benefits under their respective policies — issues which fall outside the scope of the CFA." Myska, 114 A.3d at 777. The Myska court specifically differentiated the case from Weiss: "The Court in Weiss found the CFA applied to allegations of fraudulent discontinuation of previously authorized benefits. The Court did not discuss the precedent we have cited, which excludes determination of initial coverage disputes." Id. (collecting cases).

Based on the above precedent, Plaintiff's TAC does not state a claim under the CFA. Her allegations depend entirely on an "initial coverage dispute" between her and Defendant, as opposed to the "fraudulent discontinuation of previously authorized benefits" that existed in Weiss. Myska, 114 A.3d at 777. Nor do the facts of this case reflect in any way the facts of Alpizar-Fallas, in which the plaintiff was tricked into

signing a waiver. In short, Plaintiff's claim is about the improper denial of coverage, which is not covered by the CFA.[3] She does not allege "fraud in connection with the subsequent performance of a consumer contract" as it is contemplated by the CFA and exemplified in Weiss and Alpizar-Fallas. Therefore, the TAC fails to state a claim under the CFA. The Court will grant Defendant's Motion to Dismiss with respect to that claim.

### d.   Unconscionability

"Unconscionability exists where grossly disproportionate bargaining power between the parties has resulted in grossly unfair contractual provisions." Fleming Cos. v. Thriftway Medford Lakes, 913 F. Supp. 837, 839 (D.N.J. 1995). Plaintiff's TAC states that "if . . . the term 'period of time' is not ambiguous, then the term is unconscionable." [Docket No. 31, ¶ 41.] She argues that "[i]f the [disputed] provision is interpreted to cover some leaks but not others, it is grossly unfair because there is no objective standard to inform Plaintiff as to which leaks are covered and which leaks are not." [Docket No. 40, at 30.] Conversely,

> [i]f the provision is interpreted to exclude all water leaks, it is grossly unfair because it does not reflect [Defendant's] intent, as they admittedly cover

---

[3] Plaintiff does not allege any facts to support that, at the time of the sale, Defendant "never intend[ed] to pay" for certain claims, either. Had she so alleged, this would have provided a basis for a CFA claim, too. See Weiss, 482 F.3d at 266.

> some water leaks in practice. Either interpretation
> enables [Defendant] to arbitrarily decide when to
> extend coverage while Plaintiff is under the
> impression that the terms of the insurance policy
> dictate whether a loss is covered.

[Id.] In other words, Plaintiff argues that the lack of precise,
objective terms (such as specified periods of time) renders the
provision so "grossly unfair" as to be unconscionable.

This argument is substantially the same as Plaintiff's
ambiguity argument, which the Court has already rejected. The
Policy language — which Plaintiff was aware of at the time of
agreeing to the Policy — neither excludes all water leaks from
coverage nor allows Defendant to "arbitrarily decide when to
extend coverage." It covers some types of leaks while excluding
others. Although Plaintiff has made clear that she wishes the
Policy language were more explicit, that desire does not render
the language unconscionable, just as it does not render the
language ambiguous. Therefore, the Court agrees with Defendant
that Plaintiff has failed to allege any facts to suggest that
the Policy language is "grossly unfair." The Court will grant
Defendant's Motion with respect to this claim.

### 3.   Class claims

Class actions are "an exception to the usual rule that
litigation is conducted by and on behalf of the individual named
parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348
(2011) (internal quotations omitted). Thus, to justify a

departure from the general rule that each litigant proceeds with their own action, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (internal quotations omitted). "Rule 23 does not set forth a mere pleading standard." Id. at 350. Therefore, a plaintiff who attempts to certify a Rule 23 class must produce evidence sufficient to demonstrate compliance with the rule. See id. at 350-51. And the Court must undertake a "rigorous analysis" of the Rule 23 requirements, which often involves "some overlap with the merits of the plaintiff's underlying claim." Id. "[D]ismissal of class certification allegations should only be ordered 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" S. Broward Hosp. Dist. v. MedQuist, Inc., 516 F. Supp. 2d 370, 401 (D.N.J. 2007) (quoting Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)).

To be certified, a class must satisfy the four threshold requirements of Rule 23(a): "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 308-09 (3d Cir. 1998). Those seeking class certification "bear the burden of establishing by a preponderance of the evidence that the requirements of Rule

23(a) have been met." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 391 (3d Cir. 2015). If the Rule 23(a) criteria are satisfied, the court considers "whether the class meets the requirements of one of the three categories of class actions under Rule 23(b)." In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 426 (3d Cir. 2016).

One "essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Id. at 593. The "ascertainability requirement . . . is consistent with the general understanding that the class-action device deviates from the normal course of litigation in large part to achieve judicial economy." Byrd v. Aaron's Inc., 784 F.3d 154, 162 (3d Cir. 2015). This inquiry is two-fold, requiring that the plaintiff show that "(1) the class is 'defined with reference to objective criteria;' and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Id. at

163 (quoting Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013)).

Here, the class would be certified pursuant to Rule 23(b)(3). [See Docket No. 40, at 31-35.] Plaintiff's only remaining individual claim is for breach of contract. Assuming arguendo that Plaintiff could satisfy the four Rule 23(a) requirements on that claim, she could not satisfy Rule 23(b)(3)'s ascertainability requirement, which means that this is one of "those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Clark, 213 F.R.D. at 205 n.3. Therefore, the Court will strike Plaintiff's class allegations.

Plaintiff's class allegations fail because they would require "extensive and individualized fact-finding or 'mini-trials.'" Marcus, 687 F.3d at 593. In other words, there is no "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Byrd, 784 F.3d at 163. Plaintiff argues that "the common question of whether the phrase 'period of time' is ambiguous predominates over individual questions." [Docket No. 40, at 32.] But the Court has already determined that the phrase "period of time" is unambiguous. Therefore, determining whether or not Defendant wrongfully denied the putative class members' claims is an inherently individualized question that would

require a hashing out of each individual claim and whether or not the leak in question in each case occurred over a period of time and/or whether it was continuous, repeating, gradual, intermittent, slow, or trickling. The Court would have to not only identify which putative class members' claims were denied on this basis; it would then have to individually investigate whether or not those denials were justified. Such a requirement renders a class action inappropriate in this case. Therefore, the Court will grant Defendant's Motion with respect to the class claims.

## IV.  CONCLUSION

For the reasons expressed above, the Court will grant Defendant's Motion to Dismiss [Docket No. 37], in part, and deny it, in part. Namely, the Court will grant, with prejudice, the Motion with respect to Counts II, III, IV, V, and all class claims. It will also grant Defendant's Motion with respect to Plaintiff's legal argument that the Policy is ambiguous. The Court will deny Defendant's Motion with respect to Count I — Plaintiff's individual breach of contract claim. An accompanying Order shall issue.


November 25, 2020 _____          s/Renée Marie Bumb _____
Date                                   RENÉE MARIE BUMB
                                       United States District Judge